WILLIAMS, Senior Circuit Judge,
concurring:
I write separately to clarify an ambiguity in the majority opinion. The Hatch-Waxman Amendments refer in a number of places to the obligation of a firm filing a “New Drug Application” (“NDA”) to include certain information with regard to “any patent which claims the drug” in question. 21 U.S.C. §§ 355(b)(1), 355(c)(2) (emphasis added); see § 355(j)(2)(A)(vii). This case relates to the obligations of the FDA in relation to that filing, and the opinion seems to me ambiguous in its reading of the statute. The panel opinion says on the one hand that “a ‘claim’ is simply a description of the subject a patent purports to cover as established by the NDA holder.” Maj. Op. at 106 (emphasis added). This seems to imply that the statute requires the FDA to accept the NDA holder’s listing and delisting decisions, imposing on it the ministerial role that it has chosen for itself. On the other hand, the majority opinion describes the FDA’s choice to adopt a ministerial role as a “common-sense policy choice” that is merely “consistent with the statute.” Id. at 106. I have seen no reasoning either in this opinion or in those of other courts that would support the idea that the statute mandates a ministerial role; for this case, all that is needed is a conclusion that the FDA’s adoption of that role is reasonable.
A Fourth Circuit decision, aaiPharma Inc. v. Thompson, 296 F.3d 227 (4th Cir.2002), discusses the matter quite comprehensively. There an NDA holder had refused to include the plaintiffs patent in the list of patents claiming the drug. The plaintiff patent holder wanted the FDA to order the NDA holder to list the patent. At stake was the plaintiffs right under Hatch-Waxman to delay FDA approval of an “Abbreviated New Drug Application” (“ANDA”) by up to 30 months, by suing *109 the ANDA applicant for patent infringement. Id. at 236, 242; see 21 U.S.C. § 355(j)(5)(B)(iii).
The FDA’s position was that its role in the process was purely ministerial, while the plaintiff insisted that in case of a dispute the FDA had to make its own determination about a patent’s eligibility for listing. Id. at 237. Both parties argued that their view was clearly mandated by the statute. Id. at 238. After a careful analysis, the court concluded that Congress had “failed to express clearly its intent about the FDA’s role,” id., but that the FDA’s construction of the statute was “permissible.” Id. at 241.
Yet in reaching that conclusion the court noted specific provisions and elements of the statutory scheme favoring the plaintiffs position. For example, it noted that §§ 355(d)(6) and (e)(4) specifically authorize FDA disapproval, or withdrawal of approval, of an NDA application if the NDA applicant failed to fulfill its patent-listing obligations. Id. at 238. Moreover, it generally found “plausible” the plaintiffs argument that there must be a mechanism for enforcing those obligations, so as to protect the third-party patent holder’s Hatch-Waxman rights. Id. at 242. It found “some force,” furthermore, in the plaintiffs conclusion that since private enforcement was unavailable, the FDA had to fill the enforcement gap. Id. at 243. Against these elements, among other things, were the FDA’s claim of severe resource constraints and indications that in practice patent holders had not been much jeopardized.
Two propositions flow from aaiPharma. First, the FDA’s ministerial role in the Orange Book listing process is not mandated by the statute. Second, third-party patent holders have rights under Hatch-Waxman which are currently at the mercy of the NDA holder and which the FDA could vindicate by taking a more active role in the listing process. It seems quite likely, then, that had the FDA adopted the plaintiffs position and sought to protect third-party patent holders, the aaiPharma court would have viewed that construction of the statute as reasonable too.
These considerations apply at least as strongly to the present case, which concerns a dispute over a delisting rather than a dispute over a failure to list. The statute has even less to say about it; as the FDA has pointed out, the statute is “silent with regard to the withdrawal of patent information previously submitted for listing in the Orange Book.” Ranbaxy Labs. Ltd. v. Leavitt, 469 F.3d 120, 124 (D.C.Cir.2006). And the policy of protecting third-party patent holders applies just as strongly.
The Federal Circuit adopted the aaiPharma approach in Apotex, Inc. v. Thompson, 347 F.3d 1335 (Fed.Cir.2003). There, the plaintiff wanted the FDA to delist certain patents which it contended did not claim the relevant drug. Id. at 1347. Citing aaiPharma, the court held that “[w]e agree with the Fourth Circuit that the statute does not speak clearly to this issue.” Id. at 1348. Ultimately, as in aaiP-harma, the court concluded that the FDA’s approach was reasonable. Id. at 1349.
This circuit’s cases are consistent with aaiPharma and Apotex. They take the FDA’s choice of a ministerial approach as a given, without implying that the choice was mandated by the statute. Purepac Pharm. Co. v. Thompson, 354 F.3d 877, 883 (D.C.Cir.2004) (noting that the FDA “leaves to the courts” the issue of what patents actually cover); Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1080 (D.C.Cir.2001) (explaining that “[t]he FDA, pursuant to longstanding practice and its own regulations, and based on its *110 acknowledged lack of expertise and resources, has refused to become involved in patent listing disputes, accepting at face value the accuracy of NDA holders’ patent declarations and following their listing instructions”).
Thus, to read the majority opinion as implying that the statute locks the FDA into a ministerial role would be inappropriate. Such a reading would prevent the FDA from taking a more active role in the listing process, thereby better protecting third parties’ rights, and finds no support in the cases cited by the majority opinion, Maj. Op. at 106-07. The statute and the cases do, however, support the panel opinion’s view that the FDA’s decision to adopt a ministerial role in the listing process represents simply a permissible “commonsense policy choice.” Id.