556 P.2d 348
**D.RINK, INC., Plaintiff-Appellant and Cross-Appellee,**

**v.**

**Manuel A. MARTINEZ and Patricia Martinez, his wife, Defendants-Appellees and Cross-Appellants.**

**No. 10626.**

Supreme Court of New Mexico.

Sept. 9, 1976.

Rehearing Denied Sept. 27, 1976.

Keleher & McLeod, Charles A. Pharris, Albuquerque, for appellant.

Threet, Threet, Glass, King & Maxwell, Martin E. Threet, Albuquerque, for appellees.

## OPINION

MONTOYA, Justice.

In 1963, appellant (Drink, Inc.) entered into a lease agreement with appellees, Manuel A. and Patricia Martinez (Martinez), under the terms of which Drink Inc. leased from Martinez certain land in Corrales containing approximately 0.253 acres on which a bar is situated. The original lease included the liquor license, a building, fixtures and furniture, and contained both an option to renew the lease for successive five-year periods and an option to purchase the premises, including the liquor license, for $36,000.

In 1966, Martinez acquired a tract of land containing approximately 0.369 acres adjoining the land which was the subject matter of the lease, quieted title, and effectively doubled the size of the leased structure by making an addition to that structure which was wholly located on the new tract of land. Accordingly, an amendment to the original lease was negotiated to include the newly-acquired land and structure, and to raise the rent by $75 per month. The amendment provided that all the terms and conditions of the original lease would remain in full force and ef-

fect, except as expressly modified by the amendment. The record indicates that the parties were primarily concerned with amending the lease to provide for increased rental payments to reflect the increased size and value of the premises.

In 1968, Drink, Inc. renewed its lease for an additional five years. In 1973, Drink, Inc. attempted to exercise the option to purchase by tendering the $36,000 purchase price specified in the original lease. This tender was refused, and Drink, Inc. thereupon attempted to exercise its option to renew the lease by tendering the $500 required by the lease. This tender was also refused.

Drink, Inc. thereupon filed suit in the District Court of Bernalillo County to obtain a declaration that the lease and amendment were in full force and effect, particularly that the option to purchase and the option to renew were valid. In addition, Drink, Inc. sought an order for specific performance of the option to purchase clause of the lease, or, in the alternative, specific performance of the option to renew the lease and amendment for an additional five-year period and for subsequent five-year periods.

The case was tried to the court without a jury. The court, relying in part on parol evidence, found, *inter alia,* that: there was no meeting of the minds as to the renewal of the option to purchase as to the original tract of land and no agreement as to the application of an option to purchase clause to the second tract of land; that the failure of the renewal provisions of the original lease to refer to any renewal of the option to purchase caused the option to purchase provision to terminate; that the option to purchase contained in the 1963 lease had lapsed; that the option to purchase did not extend to the second tract of land which was subject to the 1966 amendment; and that the lease agreement was unconscionable as it applied to Martinez.

Judgment was entered for Martinez and Drink, Inc. appeals.

The parties raise three issues on appeal: (1) The admissibility of parol evidence to determine the agreement of the parties; (2) the validity and enforceability of the lease and amendment; and (3) Drink, Inc.'s right under the contract to renew the lease at the end of the present five-year term.

As a general rule, parol evidence will not be allowed to change the terms of an integrated, written agreement. *Woodson v. Lee,* 73 N.M. 425, 389 P.2d 196 (1963). However, parol evidence may always be introduced to establish that the document is not the true agreement of the parties—that in fact there was no meeting of the minds; that, by reason of mistake, there was no consent to the apparent agreement. See generally S. Gard, Jones on Evidence § 16:4, at 85 (6th ed. 1972).

In *Buck v. Mountain States Investment Corporation,* 76 N.M. 261, 264, 414 P. 2d 491, 493 (1966), this court used extrinsic evidence to determine the intent of the parties to a contract and declared:

"It is well established in this jurisdiction, and generally, that a court of equity may grant reformation of a contract where either by mutual mistake of the parties, or through mistake on the part of one party and fraud or inequitable conduct on the part of the other party, the written instrument drafted to evidence a contract fails to express the real agreement and intentions of the parties. [Citations omitted.]"

Similarly, the trial court in this case properly admitted evidence of extrinsic circumstances which tended to prove that it was not the true intention of the parties to grant Drink, Inc. the option to purchase the expanded facility and second tract at the price agreed upon for the first tract. If this evidence had been excluded it would have fostered an inequitable result, namely, to allow Drink, Inc. to purchase twice as much land and improvements as was contemplated in the original option. Therefore, parol evidence was properly ad-

mitted to show that the parties did not intend that Drink, Inc. would have the right to purchase the entire property, after Martinez had acquired additional land and doubled the size of the premises, for the same price and under the same terms and conditions provided for in the option to purchase.

Under another generally-recognized exception to the parol evidence rule, parol evidence will be admitted to clarify an ambiguity. However, as Martinez' brief acknowledges, the language and circumstances here indicate more of an incongruity than an ambiguity. The option to purchase clause in the original lease is clear and unambiguous and the amendment to the lease is not ambiguous on its face and makes no mention at all of an option to purchase. It does specifically state that, apart from the changes with reference to increased rent, expansion of the premises, etc., "[a]ll other terms and conditions of said lease shall remain in full force and effect save as expressly modified herein." The inconsistency is not apparent from the document itself; only in light of the surrounding, subsequent circumstances does it become evident that it would be unreasonable, inequitable and unconscionable to interpret the original option to purchase as extending, at the same price, to the second tract and the improvements placed thereon.

However, there is no merit to Martinez' argument or the court's finding that the option to purchase the first tract, as provided in the original lease, lapsed or was "extinguished." The parties agreed to include in the original lease the option to purchase the premises for $36,000, and there is no evidence to suggest that there was any ambiguity, mistake, or even "incongruity" as to this included term. As to the original 0.253 acre tract, the option to purchase is still in full force and effect; the attempted exercise was ineffective only as to the second tract, purchased and made subject to the lease subsequent to the original agreement of the parties. The doctrine

of unconscionability was intended to prevent oppression and unfair surprise, not to relieve a party of a bad bargain. Here, the enforcement of the option to purchase would be unconscionable only to the extent of the second tract. As to the first tract, there is nothing in the record to indicate that the parties intended anything other than what appears in the lease, namely, that:

"The Lessee shall have the option to purchase the demised premises, including the liquor license, at any time during the term hereof, or any renewal period, for an amount equal to $36,000 in cash. * * *"

Therefore, the option to purchase is valid and enforceable to the extent and by the terms originally contemplated by the parties, i. e., Drink, Inc. may exercise the option to purchase that part of the premises covered by the original lease terms, to the extent of the original acreage, and for the stated sum.

As to Drink, Inc.'s argument that the option to purchase was an integral part of the lease and was automatically renewed by, although nowhere mentioned in, the amendment to the lease, it is clear that the authorities cited in support of the argument are not really in point. Neither *Gulf Oil Corporation v. Clark,* 169 F.Supp. 717, (D.Md.), aff'd. 273 F.2d 195 (4th Cir. 1959); *Ruble v. Phillips Petroleum Company,* 385 P.2d 116 (Okl.1963); nor *Humble Oil & Refining Company v. Lennon,* 94 R. I. 509, 182 A.2d 306 (1962); dealt, as does the case before us, with the problem of extending the option to purchase on the terms of the original lease when the lessor had purchased additional land and the subject property had thereby doubled in size between the execution of the original lease containing the option to purchase and the execution of the amendment to the lease. Mere increase in the value of the property will not alone render specific enforcement of an option to purchase according to its original tenor an inappropriate remedy.

Nevertheless, where, as here, the increase in value was accompanied and created by a substantial, physical increase in the acreage and improvements built thereon, it becomes apparent that the radical nature of the change in the property was not within the contemplation of the parties when they entered into the original lease, and that it would therefore be inequitable to grant specific performance of the option to purchase the first and second tracts for the price negotiated for the first tract alone. See *Humble Oil & Refining Company v. Lennon,* supra, 182 A.2d at 311.

■ With reference to Drink, Inc.'s claim that the renewal provision in the original lease created a perpetual right to renew for successive five-year terms, the law is clear. While a provision for a number of renewals in a lease will generally be given effect, it is frequently held that the law does not favor perpetual leases. As the U. S. Supreme Court said in *Winslow v. Baltimore & Ohio Railroad,* 188 U.S. 646, 655, 23 S.Ct. 443, 446, 47 L.Ed. 635, 639 (1903):

> "From the ordinary covenant to renew, a perpetuity will not be regarded as created. There must be some peculiar and plain language before it will be assumed that the parties intended to create it."

Here, no such clear and unequivocal language appears in the lease. Mere provision for "successive renewals," without more, does not provide sufficient manifestation of intent that the right to renew continue perpetually to permit this court to so construe the lease.

■ ■ Certain rules of interpretation have evolved in cases involving perpetual renewals. One, already mentioned, is that perpetual renewals are not favored in the law, and that they will not be construed as conferring the right to perpetual renewal unless the language is so plain as to leave no doubt that such was the intention and

purpose of the parties. Additionally, if there are terms contained in the lease which provide for a restriction on the use of the property, make no provision for the adjustment of rentals, and provide that the property will be returned in as good condition as when originally let, then the lease will be construed as one not contemplating perpetual renewals. Some courts have construed such a lease to be renewable for one term only, unless specific language is used to indicate such a purpose. But we need not decide that issue in this case. Drink, Inc., in its brief, states the following:

> "Apparently, the present issue is one of first impression in New Mexico and the court is, therefore, free to adopt the more logical position that 'successive renewals', without any limiting adjective, is a provision for unlimited renewal.
>
> "Even if the Court should decide that there was not a sufficiently clear expression in the Lease of the intent to create unlimited renewal options, there is still no basis for holding that Drink, Inc. is not entitled to renew the Lease after 1978. In the present case, the Lessor, Mr. Martinez, has admitted that it was his intention at the time the Lease was signed to permit four renewals of the Lease. This was testified to by Defendant Manuel A. Martinez in his disposition (Tr. 96–97) and expressly admitted in an Affidavit filed with the trial court (Tr. 123). Mr. Martinez stated in the Affidavit that it was his understanding that there was to be an original term of five years and that there would be four five-year renewal periods. Thus, it is not logical or just to limit the Lease to only two renewals when Lessor admits that he agreed to at least four renewal periods after the initial terms."

■ Therefore the literal meaning of the language of the renewal provision, together with the undenied intention of the parties, as shown by Martinez' affidavit,

should be given effect. The terms of the lease provide that "lessee may extend the terms of this lease for successive five year periods by giving written notice of its election to do so," and Martinez stated that he understood that there would be an original term of five years and that there would be four five-year renewal periods.

Moreover, the renewal provisions of the lease were carried over by the amendment and extend the right to renew the lease to the additional tract and premises, to the extent of the original agreement, i. e., for four five-year periods.

For the foregoing reasons, the decision of the trial court is affirmed insofar as it concluded (1) that there was no agreement between the parties that the option to purchase should extend to the additional land and premises for the same price agreed upon for the first tract in the original lease; (2) that the language of the original lease and of the amendment to the lease does not convey a right to perpetual renewal; (3) that the lease agreement as construed by Drink, Inc. is unconscionable; and (4) that the option to purchase did not extend to the tract purchased by Martinez in 1966, which was the subject of the lease agreement. The trial court is reversed insofar as it decided that (1) the option to purchase contained in the 1963 lease had lapsed and is now unenforceable; and (2) the lease will terminate at the end of the present five-year term.

The cause is affirmed in part and reversed in part and remanded to the trial court for the amendment of its decision to conform with the views herein expressed, and to provide that the option to renew shall extend for four successive terms after the original term, if exercised in accordance with the terms of the original lease. In view of the disposition made of this appeal, costs will be apportioned equally between the parties.

IT IS SO ORDERED.

SOSA and EASLEY, JJ., concur.