**TREK LEASING, INC., a Navajo Nation Corporation, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 02–1345.**

United States Court of Federal Claims.

Filed Oct. 20, 2004.

Reissued for Publication Nov. 3, 2004.

record for the defendant, with whom were Gary Hausken, Assistant Director, John Fargo, Acting Director, and Peter D. Keisler, Assistant Attorney General; and of counsel was Michael F. Kiely, United States Postal Service.

## OPINION

DAMICH, Chief Judge.

On February 5, 2004, Defendant filed its Motion for Summary Judgment for Lack of Standing (hereinafter "Def.'s Mot.") under Rules 12(h)(3) and 56(b) of the Rules of the United States Court of Federal Claims (hereinafter "RCFC"). Def.'s Mot. at 1. For the following reasons, Defendant's motion is hereby DENIED.

### I. *Background*

Plaintiff brought this action under 28 U.S.C. § 1498(b), seeking damages for actions of the United States Postal Service (hereinafter "USPS"), which Plaintiff claims constitute copyright infringement. Complaint for Copyright Infringement (hereinafter "Compl.") ¶¶ 9, 12, at 3. On July 8, 1997, the United States (hereinafter "Defendant") entered into a lease agreement (hereinafter "Lease") with Trek Leasing, Inc. (hereinafter "Plaintiff" or "Trek"), for the construction of a post office at Fort Defiance, Arizona. Def.'s Mot. at A12–A15; *see* Plaintiff's Response to Defendant's Proposed Findings of Uncontroverted Fact (hereinafter "Pl.'s Resp. to DPFUF") ¶ 1, at 1. This lease required Trek to "hire a licensed Architect/Engineer to adapt the design of the building to meet applicable local, state and national code requirements." Def.'s Mot. at A27; Lease at C–1; *see* Pl.'s Resp. to DPFUF ¶ 2, at 1.

Trek hired Marco DeFilippis (hereinafter "DeFilippis") as principal architect and project manager for the Fort Defiance project. Compl. ¶ 19, at 4; Pl.'s Resp. to DPFUF ¶ 3, at 2. The parties disagree as to Mr. DeFilippis's employment status with Trek. Plaintiff argues that DeFilippis was a full-time employee, while Defendant claims that DeFilippis performed his work as an independent contractor whose employment was governed by American Institute of Architects Docu-

Rod D. Baker, Albuquerque, NM, counsel of record for the plaintiff.

Jon Tornquist, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of

ment B141, entitled "Standard Form of Agreement Between Owner and Architect" (hereinafter "AIA Form Agreement"). Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact (hereinafter "Def.'s Resp. to PPFUF") ¶ 1, at 1, ¶ 13, at 6–7; *see also* Def.'s Mot. at A39. This document was signed by both DeFilippis and John Mancini (hereinafter "Mancini"), Trek's president, on August 1, 1997. *Id.* According to Plaintiff, this form agreement was executed solely as a formality to document that a licensed architect was working on the project, which was allegedly required to obtain a loan to finance the project.[1] Pl.'s Proposed Findings of Uncontroverted Fact (hereinafter "PPFUF") ¶ 14, at 4.

The Fort Defiance Post Office was ultimately completed and Defendant took possession of it on September 15, 1998. Compl. ¶ 17, at 4; Def.'s Mot. at A12. On October 7, 2002, Plaintiff filed this suit alleging that Defendant had infringed its copyrights for the architectural drawings and the architectural work[2] related to the Fort Defiance post office by "affirmatively directing, authorizing, and paying for the erection" of a post office which was subsequently built in Kayenta, Arizona. Compl. ¶ 9, at 3, ¶¶ 20–21, at 4–5. Defendant's current motion claims that Plaintiff does not own the copyrights at issue and therefore does not have standing to sue. Def.'s Mot. at 2.

## II. *Standard of Review*

 Plaintiff must have a legally cognizable harm in order to have standing to sue. *Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304, 1308 (Fed.Cir.2003) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Defendant's motion alleges that Plaintiff pos-

sesses no standing to bring this suit because it is not the owner of the copyrighted architectural drawings or architectural work regarding the Fort Defiance Post Office, and therefore has suffered no harm. Def.'s Mot. at 2. Since standing is a jurisdictional requirement that must be satisfied for a case to proceed, if Plaintiff lacks standing, its complaint must be dismissed. *Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1551 (Fed.Cir.1995).

Because Defendant believes that Plaintiff has no standing, it seeks summary judgment, and thus must demonstrate both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is considered material if it might affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. An issue of material fact is deemed genuine if the evidence is such that a reasonable jury or trier of fact could return a verdict in favor of the non-moving party. *Id.* When examining the evidence, the trial court must resolve significant doubts about factual issues in favor of the non-movant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Here, Defendant will be entitled to summary judgment if it can show, as a matter of law, that there are no genuine issues of material fact and that Plaintiff is not the owner of the copyrights in question and thus has no standing to pursue this case.

## III. *Discussion*

Defendant bases its motion on the AIA Form Agreement executed by DeFilippis and Mancini. Among the provisions of the agreement is Article 6.1, which states, in relation to the drawings and other plans, that "the Architect shall be deemed the author of these

---

1. Q. [The bank] asked for a contract, or did they just ask for you to sign something?

 * * * * * *

 A. Well, they were familiar with this specific contract form, and they said they wanted to see this specific contract form.
 Response Brief in Opposition to Defendant's Motion for Summary Judgment for Lack of Standing (hereinafter "Pl.'s Resp.") at A18; Deposition of John E. Mancini (hereinafter "Mancini Dep.") at 143.

2. These copyrights related to the "exterior facade and shell" of the building, as the "layout and footprint of the facility are standard USPS design." Compl. ¶ 18, at 4; *see also* Pl.'s Resp. to DPFUF ¶ 9, at 3. The architectural work was registered with the United States Copyright Office as Registration No. VA 1–116–566, while the architectural drawings were registered as Registration No. VA 1–116–567. Compl. ¶¶ 20–21, at 4–5, Exs. 2A, 2B; Pl.'s Resp. to DPFUF ¶ 11, at 4.

documents and shall retain all common law, statutory and other reserved rights, including the copyright." Def.'s Mot. at A46; AIA Form Agreement at 8.

Defendant views the AIA Form Agreement between DeFilippis and Mancini as a valid, fully integrated contract that is entitled to enforcement under New Mexico law. Defendant's Reply to Plaintiff's Response Brief in Opposition to Defendant's Motion for Summary Judgment for Lack of Standing (hereinafter "Def.'s Reply") at 3–4. In support of its motion, Defendant asserts that, under New Mexico law, clear and unambiguous contract terms govern, and no parole evidence may be used in this case because the language is clear. Def.'s Mot. at 4–5 (citing *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 845 P.2d 1232, 1236 (1993)). Under this view, however, no court would be able to look at other forms of evidence to interpret the document. The only option available to Plaintiff would be to petition a court for the equitable rescission or reformation of the contract, which Defendant asserts Plaintiff cannot do, saying that ownership "must be resolved in state court before Plaintiff files suit in federal court." Def.'s Reply at 7 (citing *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed.Cir.1997)).[3] Defendant also points out that it is too late for Plaintiff to pursue other action, as the statute of limitations for filing a suit under 28 U.S.C. § 1498(b) and 17 U.S.C. § 507(b) has run. Def.'s Mot. at 16.

Plaintiff, on the other hand, argues that the AIA agreement was a mere formality that was executed only to obtain financing for the Fort Defiance project, and that it therefore should not be given binding legal effect. Pl.'s Resp. at 4. In particular, Plaintiff argues that neither party to the contract (DeFilippis or Mancini) ever intended for the agreement to have a binding legal effect. *Id.* at 5. Plaintiff seeks to introduce extrinsic evidence to that effect. *Id.* at 5. Further, Plaintiff asserts that, under the requirements

of the "work made for hire doctrine,"[4] Trek has ownership of the materials in question, thus giving it standing to sue. *Id.* at 6–7.

This Court must decide (1) whether the AIA Form Agreement is a valid contract that vests ownership of the copyrights in DeFilippis; and (2) if the agreement is not a valid contract, who the rightful owner of the copyrights is. The Court's decision will be governed by New Mexico law, as both parties and this Court accept that authority. Def.'s Mot. at 7–8; Pl.'s Resp. at 14 n. 2; *see Parker Beach Restoration, Inc. v. United States*, 58 Fed. Cl. 126, 128 (2003) (citing *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed.Cir.1999)) (state law controls interpretation of contracts to which the government is not a party).

**A. Jurisdiction**

Defendant asserts that the AIA agreement is a valid contract governed by state law, and that Plaintiff will therefore need to petition a state court in New Mexico to reform or rescind the contract. According to Defendant, this Court is unable to reform or rescind a contract, as each is an equitable activity and "a matter that [is] solely within the competence of a state court." Def.'s Reply at 2 (quoting *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1344 n. 1 (Fed.Cir.2003)), 7 (citing *Hartle v. United States*, 18 Cl.Ct. 479, 483 (1989)). However, before addressing whether the Court of Federal Claims can reform or rescind a contract, the Court must determine whether a valid contract exists. This can be accomplished by interpreting the agreement under applicable state law through use of the Court's pendent jurisdiction.

**1. History of Pendent Jurisdiction**

██ Federal courts have interpreted state laws when necessary for almost 200 years. *See McCulloch v. Maryland*, 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579 (1819). The author-

---

**3.** See Part III.A.3. for the Court's interpretation of *Jim Arnold*.

**4.** Under 17 U.S.C. §§ 101, 201(b), an employer for whom a copyrighted work is prepared owns the copyright on that work if its employee was acting within the scope of his employment at the time the copyrighted material was produced. This concept, known as the "work for hire doctrine," will be discussed further in Part III.C.1., below.

ity of federal courts to interpret state law in the course of their work was explained in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), wherein the Supreme Court firmly established the concept of pendent jurisdiction. *Gibbs* set forth the concept that it is appropriate for a federal court to hear a state law claim whenever "the entire action before the court comprises but one constitutional 'case.'" *Id.* at 725, 86 S.Ct. 1130. In other words, *Gibbs* instructs that a federal court can hear a state claim if it is closely bound to the federal question. This principle was clarified in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) and *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).[5] The principle was so widely accepted that when it was challenged in *Finley v. United States*, 490 U.S. 545, 549–50, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), a case dealing with pendent party jurisdiction, Congress responded by enacting 28 U.S.C. § 1367 to restore federal courts' broad supplemental jurisdiction. *See* H.R.Rep. No. 101–734, at 28 (1990).

■ Although § 1367 only applies specifically to federal district courts, the concept of pendent jurisdiction, as enunciated in *Gibbs*, is more broadly applicable. While it is true that *Gibbs* involved the application of state law to a federal *district court* case, the Court's ruling was much broader, speaking of the authority of "federal courts" and the judiciary in general. 383 U.S. at 725–27, 86 S.Ct. 1130. This Court, as the successor to a federal court in existence at the time *Gibbs* was issued,[6] is a member of the "federal courts" as understood by *Gibbs*. As such, the Court possesses the same pendent jurisdiction recognized in *Gibbs*, as long as it is not otherwise barred from that jurisdiction.

Even though it has been observed that "[t]he role of 'pendent jurisdiction' in this court is uncertain," *Lockridge v. United States*, 218 Ct.Cl. 687, 1978 WL 8471 (1978),

nowhere has Congress actually restricted this Court's exercise of pendent jurisdiction. Rather, it has been noted that pendent jurisdiction is specifically available to this Court. *Kennedy v. United States*, 19 Cl.Ct. 69, 76 (1989) ("Pendent jurisdiction may be assumed ... at the Court's discretion in the interests of judicial economy, convenience, and fairness."). Additionally, this Court has traditionally interpreted many different state laws in the course of making its decisions in a variety of areas, including: environmental and public nuisance laws, *Rith Energy, Inc. v. United States*, 44 Fed.Cl. 108, 115 (1999), *aff'd* 247 F.3d 1355 (Fed.Cir.2001); intestacy laws, *Adelsberger v. United States*, 58 Fed. Cl. 616, 619 (2003); property law, *Hage v. United States*, 35 Fed.Cl. 147, 157 (1996); and contract law, *Parker Beach*, 58 Fed.Cl. at 128.

### 2. Application of Pendent Jurisdiction

■ Defendant makes much of the fact that this Court is a court of limited jurisdiction. Def.'s Reply at 7. However, all federal courts are courts of limited jurisdiction, in that a court's jurisdiction is specifically conferred by another source—either the Constitution or a federal statute. This is entirely in keeping with *Gibbs* and *Owen*. *Gibbs*, as modified by *Owen*, sets out the conditions under which a federal court may exercise pendent jurisdiction: whenever an action "aris[es] under [the] Constitution, the Laws of the United States, and Treaties made ...' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *Gibbs*, 383 U.S. at 725, 86 S.Ct. 1130 (quoting U.S. Const. art. III, § 2). *Gibbs* further discusses guidelines regarding when federal courts should exercise their pendent jurisdiction, asserting that pendent jurisdiction is not a right to which litigants are entitled. 383 U.S. at 725–26, 86 S.Ct. 1130. According to

---

**5.** These cases will be discussed further below.

**6.** In 1992, the Court of Federal Claims succeeded the United States Claims Court, which, beginning in 1982, took over the original jurisdiction of the Court of Claims, a court that existed at the time

*Gibbs* was decided. U.S. Court of Fed. Claims Bar Ass'n, *United States Court of Federal Claims: A Deskbook for Practitioners* at 2 (David M. Cohen, ed., 4th ed.1998).

the Supreme Court, pendent jurisdiction should be exercised "in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims ...." *Id.* at 726, 86 S.Ct. 1130. *Owen* clarifies this requirement by noting that the assumption of pendent jurisdiction may not contradict congressional action: "Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim." *Owen,* 437 U.S. at 373, 98 S.Ct. 2396 (quoting *Aldinger,* 427 U.S. at 18, 96 S.Ct. 2413).

In the present case, Plaintiff seeks to enforce rights granted under statutes of the United States—17 U.S.C. § 101 (Copyright Act of 1976) as enforced through 28 U.S.C. § 1498(b). The resolution of the state claim in question, formation of a contract dealing with copyright ownership, is inextricably linked to this Court's ability to grant relief under § 1498(b). Therefore, it is reasonable to conclude that these matters constitute a single case. In addition, neither statute in question restricts this Court's ability to interpret state contract laws in the course of adjudicating claims brought under that statute. Furthermore, as noted earlier, Plaintiff would be time-barred from re-filing this action if it were dismissed, as the statute of limitations for § 1498 has passed. 28 U.S.C. § 1498(b); 17 U.S.C. § 507(b). Resolving this question under supplemental jurisdiction also conserves judicial resources and allows for resolution of the primary issue in this case: whether the USPS violated Trek's copyright in constructing the Kayenta, Arizona facility, as Trek has alleged. Thus, the Court finds that it is proper for it to exercise its pendent jurisdiction to interpret the form agreement in accordance with the contract laws of New Mexico.

### 3. *Jim Arnold* and *Apotex*

The Court's use of pendent jurisdiction can be further elucidated by close examination of two Federal Circuit cases: *Jim Arnold Corp. v. Hydrotech Sys., Inc.,* 109 F.3d 1567 (Fed. Cir.1997), and *Apotex, Inc. v. Thompson,* 347 F.3d 1335 (Fed.Cir.2003). In *Jim Arnold,* the Federal Circuit reluctantly declined to hear a case for lack of subject matter jurisdiction where the case included almost 100 allegations based on state law and only one claim related to patent infringement, and where the case was originally filed in state court. *Jim Arnold,* 109 F.3d at 1569, 1572–73. The court held that the case was improperly removed to federal court, because the district court would not have possessed subject matter jurisdiction if the case had originally been filed in federal court. *Id.* at 1569, 1572; *see also Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). The Federal Circuit therefore vacated the decision of the district court and remanded the case to Texas state court. *Jim Arnold,* 109 F.3d at 1569.

The *Jim Arnold* court reasoned that subject matter jurisdiction was improper because the claims at issue did not "aris[e] under any Act of Congress relating to patents." *Id.* at 1571 (quoting 28 U.S.C. § 1338(a)). Although the complaint stated a patent claim, the court found that jurisdiction could only exist if that claim "*arises under* the patent law," which occurs if a "well-pleaded complaint" establishes that "patent law creates the cause of action." *Jim Arnold,* 109 F.3d at 1571 (emphasis added); *see Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) ("[J]urisdiction ... extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."). The court found that the plaintiffs did not meet this test because, before a federal court could reach the underlying federal question of patent ownership, it

was necessary to resolve the ownership interests, which were based on various contract assignments. *Jim Arnold*, 109 F.3d at 1574. The court stated: "Viewed in its entirety, the complaint leaves no doubt that plaintiff's suit is premised on a state-law based set of claims arising out of an alleged breach of an assignment and royalty agreement." *Id.* Furthermore, the court found that the plaintiff had not stated "a well-pleaded complaint, a claim arising under the patent laws" and that the single statement in the complaint that dealt with patents did "not change the clear gravamen of the complaint ... [and] fail[ed] to present a nonfrivolous allegation of ownership of the patents." *Id.* at 1576 (citing *Vink v. Schijf*, 839 F.2d 676, 676–77 (Fed.Cir. 1988)), 1577.

In *Apotex*, the Federal Circuit was confronted with questions concerning that court's jurisdiction over claims against the Food and Drug Administration (hereinafter "FDA") regarding the listing of drug patents in the Orange Book.[7] 347 F.3d at 1340. The drug company Apotex sought to force the FDA to de-list patents allegedly owned by SmithKline Beecham Corporation. *Id.* at 1339–40. In district court, the FDA had moved to dismiss Apotex's claims, asserting that the district court had no jurisdiction to hear the case. *Id.* at 1341. The district court granted the FDA's motion. *Id.* The Federal Circuit, however, disagreed. *Id.* at 1342. Noting that its appellate review extended to all cases "arising under any Act of Congress relating to patents," as conferred by 28 U.S.C. § 1338(a), the Federal Circuit held that it had jurisdiction over plaintiff's case. *Id.* at 1342, 1344. The Federal Circuit distinguished *Jim Arnold* by saying:

> In arguing that this court lacks jurisdiction, the FDA relies on our decision in [*Jim Arnold*], but that case is inapposite. The plaintiffs in Jim Arnold [sic] sought rescission of an agreement assigning certain patents to the defendants and alleged that, if rescission were granted, the defendants would be liable for infringing the plaintiffs' patent rights. The court explained that any action for patent infringe-

ment required that the plaintiffs first obtain a decree of rescission, a matter that was solely within the competence of a state court, and that "until ownership is restored in the assignor, there can be no act of infringement by the assignee." *Id. at 1577* [sic]. Accordingly, the *only* subject matter before the district court was a suit for rescission of the assignment contract, which did not arise under an Act of Congress relating to patents.

*Id.* at 1344 n. 1 (emphasis added).

Defendant relies on a portion of the above footnote from *Apotex* for its proposition that ownership of the contract at issue should be adjudicated in state court. Def.'s Reply at 2. The Court disagrees. As an initial matter, the Court notes that it is not bound by the decisions in *Jim Arnold* or *Apotex*, because those cases both involve statutes governing the jurisdiction of *district courts*, and the Court of Federal Claims is not a district court. *See Apotex*, 347 F.3d at 1340; *Jim Arnold*, 109 F.3d at 1571. However, this Court does recognize the persuasive authority of *Jim Arnold* and *Apotex* and finds the reasoning in the two cases to be applicable by analogy to the present case. The Court finds that this case, like *Apotex*, is distinguishable from *Jim Arnold*, because the Court clearly has original jurisdiction over the present case under the Copyright Act and § 1498(b).

In *Jim Arnold*, the precise legal question presented by the plaintiffs was one of state law; as the Federal Circuit stated, plaintiff made "repeated reference to the need for rescission." 109 F.3d at 1574. In this case, however, Plaintiff clearly states a claim for copyright infringement, an issue under the Court of Federal Claims' jurisdiction pursuant to 28 U.S.C. § 1498(b). Instead of one claim of plaintiff's complaint referring to a federal question (patent infringement, as in *Jim Arnold*), the entire complaint of Plaintiff in this case revolves around allegations of a federal question (copyright infringement). *See* Compl. ¶ 12, at 3 (categorizing the case

---

7. The "Orange Book" is a publication produced by the FDA entitled "Approved Drug Products With Therapeutic Equivalence Evaluations," which lists certain patents claiming drugs and drug use methods. *Apotex*, 347 F.3d at 1338.

as "an action against the United States for copyright infringement"). Instead of requesting rescission of an agreement, Plaintiff makes no reference to rescission. Indeed, it is clear in the present case that the AIA agreement is not even a valid contract, so rescission or reformation would be inappropriate. *See* Part III.B., *infra.* Had Trek come to this Court seeking rescission of a valid contract governed by state law so that it could move forward with a claim for copyright infringement, this Court would be confronted with an entirely different matter. However, Trek stated a valid claim that gave this Court jurisdiction over its case. Trek, like Apotex, filed a complaint based *mainly* on a federal question, with the state contract claims being truly *pendent,* which is totally opposite the situation in *Jim Arnold.* Therefore, the Court finds that it may properly exercise its pendent jurisdiction to interpret the agreement between DeFilippis and Mancini.

## B. Validity of the AIA Form Agreement

Having decided that the exercise of pendent jurisdiction is available, this Court now turns to interpretation of the agreement—specifically, whether parol evidence (in this case, deposition testimony and affidavits) may be used to determine the agreement's validity. The Court must look to New Mexico law for guidance on this issue. *See Parker Beach,* 58 Fed.Cl. at 128.

In *Taylor v. Allegretto,* 112 N.M. 410, 816 P.2d 479 (1991), the New Mexico Supreme Court addressed the validity of a similar AIA form agreement[8] in a case with similar facts to the current case. In *Taylor,*

a property owner and an architect had executed an AIA form agreement, allegedly for the purpose of obtaining a loan. *Id.,* 816 P.2d at 480–81. One party to the AIA agreement alleged that the agreement was invalid, asserting that it had only been executed as a formality. *Id.* When confronted with the question of whether parol evidence should be allowed to prove that the agreement was not intended to embody the desires of the parties, the court readily agreed that such evidence could be proffered: "It is a well-settled exception to the parol evidence rule that parol evidence is admissible to prove that a contract was executed as a sham." *Id.* at 482 (citations omitted). Because of the great factual similarity between *Taylor* and the present case, this Court regards *Taylor* as controlling. Further, *Taylor's* reasoning is even more persuasive in this case, because here, *both*[9] parties to the form contract assert the contract's invalidity.[10] Pl.'s Resp. at A3; DeFilippis Aff. ¶ 10, at 3; Def.'s Mot. at A89; Mancini Dep. at 141. Therefore, this is an even stronger case for allowing the use of parol evidence than was *Taylor.*

This Court must now decide if the agreement was, in fact, a valid contract. Under New Mexico law, a key component of a valid contract is mutual assent of the parties to the terms of the agreement. *United Water N.M., Inc. v. N.M. Pub. Util. Comm'n,* 121 N.M. 272, 910 P.2d 906, 910 (1996); *DeArmond v. Halliburton Energy Servs., Inc.,* 134 N.M. 630, 81 P.3d 573, 580 (App. 2003). A signed agreement is strong evidence of the intent of the parties, but "the existence of [a] written document itself, while it may be strongly probative that a binding

---

**8.** It is not clear from the facts in *Taylor* whether the form contract was the same B141 form contract, but the contract was definitely an AIA form agreement of some type. *Taylor,* 816 P.2d at 481.

**9.** Defendant cites language from DeFilippis's deposition, claiming that DeFilippis intended the AIA contract to be binding: "DeFilippis testified under oath that he felt the AIA contract covered his butt and was legally binding between himself and Trek." Def.'s Reply at 2 (citing Def.'s Mot. at A78; Deposition of Marco DeFilippis (hereinafter "DeFilippis Dep.") at 143). However, DeFilippis also made statements indicating that he did not

intend the contract to be binding, such as "there was no reason for me to sign it." Def.'s Mot. at A78; DeFilippis Dep. at 143. In addition, DeFilippis attested to his lack of intent to contract in his affidavit. Pl.'s Resp. at A3; Affidavit of Marco DeFilippis (hereinafter "DeFilippis Aff.") ¶ 10, at 3. Finally, the facts must be construed in favor of Plaintiff, since this is a motion for summary judgment. *Diebold,* 369 U.S. at 655, 82 S.Ct. 993. Therefore, Defendant's argument must fail.

**10.** It is further noted that DeFilippis's statement that he had no intent to contract actually is *contrary* to his interest.

agreement was intended, is not alone sufficient to prove that the parties intended the writing to govern their relations." *Taylor*, 816 P.2d. at 482. When the express language of an agreement is contradicted by extrinsic evidence indicating that the parties had no intent to contract, such extrinsic evidence must be weighed against the contents of the writing. *See id.* at 483 ("Surrounding circumstances and the conduct of the parties should be given due consideration .... But the court should not dodge the determination of the weight of the evidence by appealing to a 'parol evidence rule' and finding that a written integration exists without listening to testimony that it does not.") (citation omitted).

■■■ As mentioned above, both parties to the agreement acknowledge that neither considered the AIA form contract to be a binding, or even valid, agreement. This Court is thus asked to weigh the credibility of the two parties who signed the agreement against the assertions of a non-party which is engaged in litigation with one of the parties. Here, however, weighing is unnecessary. As this is a motion for summary judgment by Defendant, all significant doubts about factual issues must be resolved in favor of Plaintiff. *Diebold*, 369 U.S. at 655, 82 S.Ct. 993. When the facts are viewed in the light most favorable to Plaintiff, it becomes clear that the parties did not intend the AIA agreement to be a valid contract. Pl.'s Resp. at A3; DeFilippis Aff. ¶ 10, at 3; Def.'s Mot. at A89–A90; Mancini Dep. at 142–43. Defendant, however, argues that this situation would be more accurately deemed a "mutual mistake": "[T]he Court cannot simply ignore the terms of a *valid* agreement. If a mistake *in the drafting of the agreement* occurred then Plaintiff must ask a court to reform or rescind those portions of the contract which do not express the parties' true intent." Def.'s Reply at 6 (emphasis added) (citing *Ballard v. Chavez*, 117 N.M. 1, 868 P.2d 646, 647 (1994)). However, Defendant is confusing Plaintiff's argument: Plaintiff asserts that there was no intent to contract and thus *no*

*valid agreement*, not that there were certain parts of a *valid* agreement which did not express the parties' intent. In this case, DeFilippis and Mancini did not make any mistakes; they simply signed an agreement without the intent to contract. Therefore, the AIA Form Contract does not operate to vest ownership of the copyrights in DeFilippis.

## C. Ownership of the Copyrights

Having decided that the AIA Form Agreement does not govern ownership of the copyrights, this Court must utilize other sources of law.

### 1. Work for Hire Doctrine

■■■ Plaintiff asserts that DeFilippis was an employee of Trek at the time of the creation of the Fort Defiance materials,[11] while Defendant disagrees, asserting that DeFilippis is properly classified as an independent contractor. PPFUF ¶ 1, at 1; Def.'s Mot. at 15 n. 5. This distinction is an important one because the two types of employees are treated differently for purposes of copyright ownership. An employee who creates copyrighted materials while acting within the scope of his employment will generally not be the owner of any resulting copyrights. 17 U.S.C. §§ 101, 201(b). Instead, under the work for hire doctrine, the employer (in this case Trek) will be considered the owner. *Id.* In contrast, an independent contractor will generally be the owner of copyrights resulting from his work, absent some agreement to the contrary. 17 U.S.C. §§ 101, 201(a).

■■■ To examine DeFilippis's employment status, this Court needs to apply the 12–factor test laid out in *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). This test involves an analysis of the following factors: (1) skill required, (2) source of instrumentalities and tools, (3) location of work, (4) duration of the relationship between parties, (5) hiring party's right to assign additional projects to hired party, (6) extent of hired party's discretion over when and how long to

11. Both the architectural drawings and the architectural work were registered as works made for hire by Trek. Pl.'s Resp. to DPFUF ¶ 12, at 4.

work, (7) method of payment, (8) hired party's role in hiring and paying assistants, (9) whether hired party is in business; (10) whether the work is part of the regular business of hiring party, (11) provision of employee benefits, and (12) tax treatment of hired party. *Id.* at 751, 109 S.Ct. 2166.

In applying the *Reid* factors, the Supreme Court has stated that courts should "consider the hiring party's right to control the manner and means by which the product is accomplished," while warning that "[n]o one of these factors is determinative." *Id.* at 751–52, 109 S.Ct. 2166. It appears to be undisputed that at least ten of the twelve *Reid* factors favor the conclusion that DeFilippis was an employee of Trek Leasing.[12] *See* Pl.'s Resp. at 8. DeFilippis's tools were provided by Trek; he spent most of his working time at Trek Leasing's offices; and Trek had the right to, and did, assign projects to DeFilippis beyond the scope and duration of the Fort Defiance project. Pl.'s Resp. at A2–A3; DeFilippis Aff. ¶ 5, at 2, ¶ 8, at 3. Trek Leasing was in the business of designing and building structures, and the president of the company, Mancini, made all of the hiring decisions. Pl.'s Resp. at A1, A3; DeFilippis Aff. ¶ 3, at 1, ¶ 7, at 3. In addition, while Trek acknowledges that factor 6 (extent of hired party's discretion over when and how long to work) could contradict its position, DeFilippis's view of Trek as his employer, and its president as his boss, indicates that DeFilippis was an employee of Trek and did not have his own business. Pl.'s Resp. at 8, A2; DeFilippis Aff. ¶ 6, at 2. This is not disputed by Defendant, who also admits that DeFilippis received a regular salary from which taxes were withheld. Def.'s Resp. to PPFUF ¶ 3, at 2.

Trek concedes that factor 1 (skill required) is possibly detrimental to its case, since DeFilippis is a highly skilled worker. Pl.'s Resp. at 8. However, Defendant does not address this factor. Instead, Defendant argues that factor 11 (employee benefits) is contrary to Plaintiff's position, stating that Trek did not

pay DeFilippis's health or 401(k) benefits. Def.'s Resp. to PPFUF ¶ 4, at 2–3 (citing Def.'s Reply at A107; DeFilippis Dep. at 160). This allegation is disputed by Plaintiff, which asserts that it provided fringe benefits to DeFilippis.[13] PPFUF ¶ 4, at 2; Pl.'s Resp. at 8. However, even if this factor is found to be contrary to Plaintiff's view, it is hardly dispositive, because overall, an analysis of the factors strongly supports a finding that DeFilippis was an employee of Trek. Additionally, as this Court is addressing this question on summary judgment, factual inferences are to be drawn against the moving party—in this case, Defendant. *Diebold,* 369 U.S. at 655, 82 S.Ct. 993.

As a result, the Court finds that DeFilippis was an employee of Trek Leasing at the time of the Fort Defiance project. The Court further finds that DeFilippis created the copyrighted works within the scope of his employment, a fact which *does not seem to* be in dispute. Thus, the work for hire doctrine has been satisfied, and the Court holds that Plaintiff Trek Leasing is the owner of the copyrights at issue in this case.

## 2. Joint Creation

As an alternative ground for decision, Plaintiff asserts that Mancini was a co-author of the materials in question. Pl.'s Resp. at 18–19. If this were proven, it could vest co-ownership in Trek. *See* 17 U.S.C. § 201(a). However, since the Court has already decided that the copyrighted works in question were produced by DeFilippis within the scope of his employment, it is unnecessary to reach the question of whether Mancini was a joint author of the works.

## IV. *Conclusion*

This Court finds that Trek Leasing has standing to bring this suit, because Trek Leasing is the owner of the copyrights at issue. Therefore, Defendant's Motion for

---

12. These factors are supported by statements of DeFilippis in his affidavit. Defendant has not refuted these statements.

13. It is further noted that DeFilippis said in his deposition that he was offered a health plan by Trek, but that he refused it because he had health benefits through his wife's company. Def.'s Reply at A107; DeFilippis Dep. at 160.

Summary Judgment for Lack of Standing is hereby DENIED.[14]

---

**14.** This document was reissued for publication on November 3, 2004, pursuant to a Joint Report filed by the parties, dated October 28, 2004. The Joint Report stated that the opinion, originally filed under seal, could be published without alteration.